**Kenneth B. KROHN, Plaintiff, Appellee,**

v.

**UNITED STATES of America, et al., Defendants, Appellants.**

**No. 83–1839.**

United States Court of Appeals, First Circuit.

Argued April 5, 1984.

Decided Aug. 22, 1984.

Opinion on Denial of Rehearing Sept. 28, 1984.

Richard E. Welch, III, Asst. U.S. Atty., Boston, Mass., with whom Mark L. Wolf, Acting U.S. Atty., and Paul W. Johnson, Asst. U.S. Atty., Boston, Mass., were on brief, for defendants, appellants.

Kenneth B. Krohn, pro se.

Before COFFIN and ALDRICH, Circuit Judges, and BONSAL,* Senior District Judge.

BAILEY ALDRICH, Senior Circuit Judge.

Plaintiff's amended complaint, originally in 44 counts, asserts civil damages claims for false arrest and other civil rights violations arising from an FBI investigation into the unexplained disappearance in 1973 of one Raul Hernandez-Bustamonte. Of the claims relating to actions in 1973, only part of one count, count 28, remains for our consideration; a number of counts remain with respect to actions in 1974. Count 28 has been before us once. *Krohn v. United States*, 566 F.2d 1166 (1st Cir.1977) (unpublished). Presently, the defendant federal officials appeal from the district court's denial of their defenses of absolute and qualified immunity, raising obvious questions of appealability. 578 F.Supp. 1441. 28 U.S.C. § 1291. We must first, however, review the facts.

Plaintiff was arrested in 1973 on a kidnapping charge, pursuant to a duly issued federal warrant. The arrest followed an investigation which included searches of various of plaintiff's properties, including a safe deposit box in Boston. This charge was eventually dropped, but the investigation continued, and in 1974 plaintiff was again arrested, on the same charge, on a new federal warrant. At that time a Maryland arrest warrant also issued, charging plaintiff with Hernandez's murder. Plaintiff claims that this warrant was procured at the request of the federal officials, and entirely on information supplied by them.

The federal charges were dismissed by a magistrate for want of probable cause, and

---

* Of the Southern District of New York, sitting by designation.

as plaintiff was leaving the courtroom he was detained by a federal official pursuant to the Maryland warrant. After half an hour he was released, allegedly because the Maryland authorities indicated they did not wish to prosecute. Plaintiff complains of this half hour.

What remains of count 28 alleges a state law claim against a federal prosecutor, William Brown, several agents of the FBI, and plaintiff's former attorney, James Pool, for conspiracy to convert plaintiff's property contained in the Boston safe deposit box. Plaintiff claims that during the investigation, Brown and Pool struck a deal whereby Brown would supply the key—in his possession due to a prior search of plaintiff's apartment—if Pool would supply the location of the box so that Brown might search it. Plaintiff claims that Pool "stole" several thousand dollars from the box, (a palpable exaggeration, *see* n. 7, post) and that Brown knew of Pool's intentions when he struck the deal. Brown and the FBI officers[1] now claim an absolute immunity from such a state law claim, under *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

The remaining claims are brought directly under the Constitution, *see Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and under 42 U.S.C. § 1983,[2] and are related to the 1974 warrants and detentions. The 1974 federal warrant was based upon a six-page affidavit of defendant FBI agent Baugh. On appeal the gist of all of plaintiff's 1974 claims is that Baugh intentionally misrepresented facts in the affidavit that were necessary to the determination of probable cause. These misstatements al-

legedly rendered the federal arrest illegal (count 7); they also infected the federal officials' transmittal of information to the Maryland authorities (counts 8 and 10), and the subsequent detention pursuant to the Maryland warrant (counts 9 and 11), inasmuch as defendant federal officials involved knew that there was insufficient information to establish probable cause.

■ Essentially, then, these claims allege the constitutional violation recognized in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), where the Court held that a warrant issued upon a magistrate's finding of probable cause is nevertheless invalid, and the evidence obtained thereunder may be suppressed, if the affiant made intentional or reckless misrepresentations or misstatements which were necessary to that finding. *See also Guerro v. Mulhearn*, 498 F.2d 1249, 1256 (1st Cir.1974). Any further allegations of impropriety do not state constitutional violations. As to the arrest pursuant to the federal warrant, if the affidavit, disregarding improper misstatements, still established probable cause, plaintiff is entitled to no further constitutional safeguards,[3] *see Franks*, ante, 438 U.S. at 172 n. 8, 98 S.Ct. at 2684 n. 8; *cf. Baker v. McCollan*, 443 U.S. 137, 142–46, 99 S.Ct. 2689, 2693–95, 61 L.Ed.2d 433 (1979), and any intentional misstatement, or actual malice, would be irrelevant. Nor is there any impropriety in sharing information with the state officials, *cf. Bartkus v. Illinois*, 359 U.S. 121, 123, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959), or any constitutional violation in urging them to obtain a warrant, as long as the available information established probable cause.[4] And a federal official does not

---

**1.** The FBI officials apparently communicated directly with Pool concerning the location of the box, prepared the warrant affidavit, and assisted Brown in the search.

**2.** For present purposes we see no difference between the *Bivens* claim and the section 1983 claim, so there is no need to discuss whether section 1983 applies to actions by a federal official allegedly taken under color of state law.

**3.** Neither party briefed whether probable cause existed in the absence of the alleged misstatements, and we do not address the issue.

**4.** Plaintiff's argument in this respect is somewhat obscure. In his complaint he argued that the federal officials' actions in allegedly influencing the issuance of a state warrant violated the Eighth Amendment's prohibition against requiring excessive bail. He contended that he was in federal custody at the time, and although he could have made the federal bail, he could

violate the Constitution by executing a facially valid state warrant, if he does not know that it is invalid.[5]

Plaintiff's allegations of impropriety in 1974 thus reduce to what the federal officials knew concerning the existence of probable cause when they took various actions. Defendant officials claim that they are entitled to summary judgment under the qualified immunity doctrine of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), inasmuch as these claims merely allege subjective bad faith, which *Harlow* held was no longer sufficient to avoid the qualified executive immunity. The lower court denied the immunity claims without citing *Harlow*. Before we reach the merits, however, we must decide whether the various denials are appealable.

### 1. Appealability

#### a. Absolute immunity

■ Recently, in *Agromayor v. Colberg*, 738 F.2d 55 (1st Cir.1984), we held that the denial of a plausible claim of absolute legislative immunity is an immediately appealable "final decision" under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), inasmuch as one of the elements of the immunity is freedom from having to stand trial. For appealability purposes, we see no distinction between the immunity claimed there and the absolute immunity

from common law suits for federal officials acting within the scope of their authority here claimed by defendant Brown and the other federal officials. It is perhaps true that reasons other than freedom from having to stand trial, such as federalism concerns, are of greater importance in granting immunity from common law suits than they are in other immunities whose denials have been held to merit immediate appeal; nevertheless, *Barr v. Matteo*, ante, makes clear that one of the immunity's purposes is to absolve federal officials from the burden of having to stand trial. *Barr*, ante, 360 U.S. at 571, 79 S.Ct. at 1339. And Brown's claim certainly is plausible, especially in light of the discussion of *Barr* in *Butz v. Economou*, 438 U.S. 478, 494–95, 98 S.Ct. 2894, 2904–05, 57 L.Ed.2d 895 (1978), and in the Courts of Appeals. *See* post. We accordingly have jurisdiction over the appeal in count 28.

#### b. Qualified immunity

■ The appealability of the denials of qualified immunity presents a more difficult question. Several circuits have now addressed the issue, with different approaches, and differing results. The controversy centers on interpreting the Supreme Court's opinion in *Harlow*, ante, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396. The question is whether, in enlarging the executive official's qualified immunity, the

not have made the state bail also, and so was forced to remain in federal custody for eleven days. Passing several preliminary questions which would cast doubt on such a claim, we still do not see how plaintiff's bail rights were violated here. The allegations in plaintiff's complaint do not establish that any bail set was excessive. Whatever facts plaintiff would have us hypothesize, and whatever the federal officials may have conspired to do, no state bail ever was set, and plaintiff was not required to post excessive bail.

The district court recast this count as one under the Fourth and Fifth Amendments, and we agree. Moreover, the only constitutional process plaintiff was due was that the federal officials, through cooperation with the state, not procure a warrant known to issue on less than probable cause. Plaintiff does not allege that no prosecution was intended when the warrants

or the arrests were undertaken. His failure to make bail is, at most, an element of damages under the Fourth Amendment claim.

5. Plaintiff argues that the affidavit for the state warrant was facially invalid, a point on which he clearly is correct. The affidavit stated:

"Through investigation it was revealed that Kenneth Bruce Krohn did on the above date, kill and slay one Raul Hernandez by mutilating his body."

The warrant itself, however, was facially valid. Although the federal officers supplied the state officers with information about plaintiff, plaintiff has not argued, nor is there any evidence, that federal officer Muir, who executed the warrant, either participated in drawing the affidavit or knew what it said. The facial validity or invalidity of the affidavit is therefore irrelevant.

Court sufficiently emphasized the immunity as a tool to protect government officials from trial, as opposed to liability, such that pre-trial denials of the immunity should be immediately reviewed. The District of Columbia Circuit and the Eighth Circuit have held that it did. *See Evans v. Dillahunty,* 711 F.2d 828 (8th Cir.1983); *McSurely v. McClellan,* 697 F.2d 309 (D.C.Cir.1982); *see also Metlin v. Palastra,* 729 F.2d 353, 355 (5th Cir.1984). The Third Circuit, over a strong dissent, has held that it did not. *Forsyth v. Kleindienst,* 729 F.2d 267 (3rd Cir.1984).

We consider that the importance which *Harlow* gave the immunity, or, to put it another way, the inhospitality it evidenced towards groundless suits against officials, would best be effected by making denials of the immunity immediately appealable, assuming a plausible claim thereto. As *Harlow* noted, up until then the so-called "good faith" immunity would be defeated if an official

> *"knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or,* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury ..."* (Emphasis in original.) *Harlow,* ante, 457 U.S., at 815, 102 S.Ct., at 2737.

*Harlow* eliminated the second, the state of mind, or purely "subjective" element of this immunity, leaving only objective criteria, requiring an affirmative showing, and thus more easily subject to judicial resolution prior to trial.

One of the reasons the Court gave for this was to cut off insubstantial claims in limine. Such claims proceed to trial at "a cost not only to the defendant officials, but to the society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Id.,* at 814, 102 S.Ct., at 2736.

The majority of the court in *Forsyth v. Kleindienst,* ante, although it observed *Harlow,* accepted the following language from the court's dissenting opinion in an earlier *Forsyth* appeal.

> "[C]oncern over subjecting government officials to unwarranted claims is best handled through adjustment of the substantive rules of law, as the Supreme Court has recently done, and not by changing the established practice of limiting appellate review of interlocutory decisions." *Forsyth,* ante, 729 F.2d at 273.

This language would seem precisely to overlook what the Court did in *Cohen,* ante, namely, adopt a novel procedure, that would meet the need of the substantive law. If one of the law's purposes is to avoid trial of an insubstantial case, this can be fully effected only by permitting interlocutory appeal. We do not follow *Forsyth*'s reasoning to the contrary.

We recognize, of course, the interests in finality and the problems of piecemeal adjudication that ordinarily counsel against appeal from non-final orders. *See Forsyth,* ante, 729 F.2d at 274. Further, we are cognizant that qualified immunity differs from absolute immunity in that it is not so readily decided by motion; obviously, on some occasions officials possessing only qualified immunity must stand trial. At the same time, we see no more reason why an official whose qualified immunity has not been impeached should have to stand trial, and have the benefits the Court saw in *Harlow* "cancelled out," *see Abney v. United States,* 431 U.S. 651, 662 n. 7, 97 S.Ct. 2034, 2041 n. 7, 52 L.Ed.2d 651 (1977), than an official whose immunity was unimpeachable to begin with.

Courts accepting jurisdiction over qualified immunity appeals have stated the rule two ways. In *McSurely,* ante, 697 F.2d at 315–16, the District of Columbia Circuit held denials of summary judgment immediately appealable, but then, on review, affirmed the denial on an evidentiary showing that would defeat the privilege. In *Evans,* ante, the Eighth Circuit professed to reject *McSurely,* and ruled that immedi-

ate appealability depends upon the evidentiary showing, viz., that essential facts not be in dispute. In a sense these are merely two routes to the same end, it being clear that, if there is an issue of fact, a denial of summary judgment cannot be reversed. Since, however, there is conceptual difficulty in having jurisdiction turn on a case's merits, we prefer the analysis of the District of Columbia Circuit, and we accept jurisdiction at the outset.

### 2. The Merits

#### a. The conversion claim—availability of the defense of absolute immunity.

■ Plaintiff first raises a procedural bar to defendant Brown's claim of absolute immunity. The issue of his qualified immunity was before us earlier, on appeal from the district court's granting him summary judgment. *Krohn*, ante. In that decision, which was pre-*Harlow*, we reversed, holding that the evidence raised a sufficient issue of fact to overcome qualified immunity. *Barr v. Mateo* absolute immunity was not raised in the district court, or on appeal, but absolute prosecutorial immunity under *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), was raised in Brown's motion, and alluded to on appeal. Plaintiff now contends that all claims of absolute immunity are precluded, or waived, noting, by way of argument, that Brown never has filed an answer.

We disagree. First, Brown's failure to file an answer apparently was occasioned because five other federal defendants filed a joint answer after the claim against Brown had been dismissed and before its reinstatement by this court. Thus Brown's name was not included. That answer pleaded the officials' immunities with sufficient clarity to preserve an absolute immunity defense. Second, we do not find Brown precluded by our prior decision.

Both the district court and this court limited their discussions to qualified immunity, despite sections in Brown's motion and briefs that seemed to raise an absolute immunity. We cannot say that the question has already been decided. Finally, we note that the absolute immunity defense, which on a motion to dismiss translates to failure to state a claim, is not a defense which must be raised on the first motion to dismiss or waived under F.R.Civ.P. 12(g), 12(h)(2). Although Brown should have cited *Barr* to the court on his original motion, we decline to preclude him from raising it now.

#### b. The conversion claim—absolute immunity

■ As to the defense itself, we must agree with Brown and the other federal defendants that whatever the strength or weakness of the plurality opinion in *Barr*, the subsequent opinion in *Butz* indicates that certain federal officials are absolutely immune from common law tort suits for discretionary actions taken "within the outer perimeter of [the official's] line of duty." [6] *Butz*, ante, 438 U.S. at 487–88, 494–95, 98 S.Ct. at 2904–05; *Barr*, 360 U.S. at 575, 79 S.Ct. at 1341; *see also Harlow*, ante, 457 U.S. at 807–08, 102 S.Ct. at 2732–33. This also has been the interpretation of the Courts of Appeals. *See, e.g., Wallen v. Domm*, 700 F.2d 124 (4th Cir.1983); *Miller v. DeLaune*, 602 F.2d 198 (9th Cir. 1979); *Evans v. Wright*, 582 F.2d 20 (5th Cir.1978); *cf. Gray v. Bell*, 712 F.2d 490, 505–06 (D.C.Cir.1983); *Granger v. Marek*, 583 F.2d 781, 784–85 (6th Cir.1978); *Berberian v. Gibney*, 514 F.2d 790, 793 (1st Cir.1975). Here plaintiff's remaining suit is under state law, for conspiracy to convert his property, so that the first requirement clearly is met. It is less clear, however, that Brown was acting within the scope of his authority as a federal prosecutor when he struck the deal with attorney

---

6. *Butz* held that executive officials generally are entitled only to qualified immunity from *constitutional* claims, although prosecutors acting in their quasi-judicial capacities enjoy absolute immunity even from those. *See Butz,* 438 U.S. at

507–11, 98 S.Ct. at 2911–13; *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Neither of these immunities is at issue here.

Pool. Plaintiff urges that only actions authorized by law are within an official's scope of authority, and that federal prosecutors "are *not* authorized by law to enter into a corrupt deal with an accused's defense attorney even if the sole purpose of the deal is to obtain evidence . . . ."

To the extent plaintiff argues that the means adopted by Brown were illegal and therefore not entitled to immunity, his argument has been rejected by the Supreme Court because it proves too much. A limitation that absolute immunity from common law suit can only be invoked if the official acted lawfully would swallow the immunity altogether. *See Barr,* 360 U.S. at 572, 79 S.Ct. at 1340 (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949); *cf. Butz,* 438 U.S. at 494–95, 98 S.Ct. at 2904–05 ("*Barr* also appear[s] . . . to have extended absolute immunity to an officer . . . who . . . was deliberately misusing his authority.") There is, of course, a limitation to the extent that the means adopted by an official, or the end sought, clearly exceed his authority, and we agree with the lower court that this line may be difficult to draw. *Compare Wallen,* ante, and *Grey,* ante, 712 F.2d at 505–06, with *Bishop v. Tice,* 622 F.2d 349, 359–60 (8th Cir. 1980) and *Kelley v. Dunne,* 344 F.2d 129 (1st Cir.1965). But we do not believe that Brown, or the FBI agents, crossed it here. Federal prosecutors must investigate as well as prosecute, as evidenced by their express authority to request search warrants. *See* F.R.Crim.P. 41(a); *cf. Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976). They must enjoy broad discretion as to the means employed. FBI agents, of course, are given explicit authority to investigate and seize. *See* 18 U.S.C. §§ 3052, 3107. Here Brown and the other officials clearly were acting in their investigative capacity.

Even if, taking plaintiff's allegations as true,[7] striking a deal with defense counsel in order to obtain evidence which appears detrimental to defendant is of questionable propriety, the ultimate end of gathering evidence for a criminal prosecution was within the official's powers, and the means chosen were not "manifestly or palpably beyond [their] authority." *See Gray,* ante, 712 F.2d at 505 (quoting *Spalding v. Vilas,* 161 U.S. 483, 486, 16 S.Ct. 631, 632, 40

L.Ed. 780 (1895)). We uphold the federal officials' immunity under count 28.

c. *The 1974 arrests—absolute immunity*

Responding to the counts relating to the 1974 arrests, defendants first assert that plaintiff is collaterally estopped on these claims, in that the United States District Court for the Eastern District of Virginia already has ruled that the government had probable cause for the 1974 arrests, and that decision was not appealed. We disagree. Collateral estoppel applies only to matters actually litigated and decided in the prior proceeding, and which were "essential" to that decision. *See Cardillo v. Zyla,* 486 F.2d 473, 475 (1st Cir.1973); *cf. Manning v. Grimsley,* 643 F.2d 20, 23 (1st Cir.1981). The finding here was made in ruling on defendant's motion for a speedy trial, in October, 1977. The Virginia court set out the relevant factors in ruling on such a motion. They are the length of delay between arrest and trial, the reason for the delay, whether defendant asserted his speedy trial right, and whether or not he has been prejudiced by the delay. *Barker v. Wingo,* 407 U.S. 514, 530–32, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972). None of the factors directly related to whether the arrest itself was based upon probable cause, but in discussing the reasons for the four year, seven month delay from defendant's first arrest in 1973, the court found it necessary to discuss whether such an early arrest was justified. In so doing it ruled that the government "felt" it had probable cause in 1973. It also found that the 1974 arrest was "justified."

These determinations are not entitled to estoppel effect. First, we are not convinced that the court actually found there was probable cause for the 1974 arrest. Second, a probable cause finding was not essential to the court's decision that Krohn's speedy trial right had not been violated. The speedy trial right is based on the public's interest in prompt justice, and on avoiding prolonged incarceration of accuseds, and the consequent stigma, prior to a legal adjudication of guilt. *See Barker,* 407 U.S. at 519–20, 92 S.Ct. at 2186–87. The duties imposed thus stem from concerns arising *after* arrest. Finally, we note that the decision was never appealed because Krohn entered a guilty plea shortly thereafter.

---

7. Pool was subsequently disbarred for his conduct, but not for conversion of the safe deposit funds, which plaintiff says he "stole." These

Pool was found to have given to plaintiff's sister for use—including a retainer—in his defense.

Next, defendant Baugh asserts an absolute immunity from the claim in count 7—lack of probable cause for the federal warrant—on a theory derived from the absolute witness immunity recently recognized in *Briscoe v. Lahue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). *Briscoe* established an absolute immunity from section 1983 suit for a police officer/witness. The immunity is based on two established principles—the common law immunity for witnesses in general, and the immunity generally accorded officials "performing a critical role in the judicial process." *Id.* 460 at 329–340, 103 S.Ct. at 1112–18. The government argues that the *Briscoe* immunity should extend to a police officer swearing out a warrant affidavit.

Again, we disagree. The witness immunity discussed in *Briscoe* is afforded to encourage complete disclosure in judicial proceedings as a means for ascertaining the truth, and, because of its common law roots, is necessarily limited to witnesses in judge-supervised trials. The notion is that witnesses should be encouraged to tell all they know without fear of reprisal, and the judicial process—rules of evidence, cross-examination, and the factfinder—will be able to discern the truth. *Cf. Butz,* ante, 438 U.S. at 512, 98 S.Ct. at 2913 ("[T]he safeguards built into the judicial process tend to reduce the need for private damage actions as a means of controlling unconstitutional conduct.") The warrant affidavit process is fundamentally different. As the Court said in *Franks,* ante, 438 U.S. at 164–65, 98 S.Ct. at 2680–81 (quoting *United States v. Halsey,* 257 F.Supp. 1002, 1005 (S.D.N.Y.1966) (Emphasis in original)

> "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing."

This is because unlike the criminal defendant, who enjoys the immediate right to set the record straight through cross-examination, or by submitting his own evidence, the subject of a warrant must hope that the magistrate can discern inconsistencies in the affiant's story at an ex parte hearing. Given this relative lack of procedural safeguards, we think it desirable that officers should, in effect, be required to think twice about allegations in warrant affidavits.

Nor can the second prong of the *Briscoe* holding—immunity for officers critical to the judicial process—justify an extension to warrant affiants. This court has long held that prosecutors—officials more critical to the judicial process than the police—are not acting in their quasi-judicial capacity when they act as investigators, and consequently do not enjoy absolute immunity for their actions in that role. *See Guerro v. Mulhearn,* ante, 498 F.2d at 1256. We hold activities such as requesting a warrant not judicial, but administrative, and that absolute immunity does not apply. It is a fair "accommodation of competing values," *Harlow,* ante, 457 U.S. at 814, 102 S.Ct. at 2736, that the officer be granted a qualified immunity, only.

d. *The 1974 arrests—qualified immunity.*

Before dealing with the defense of qualified immunity we must first consider the exact scope of the *Harlow* ruling. The government takes the position that the objective test there adopted, "what a reasonable official should have known," and the elimination of a subjective test, eliminates actual, "subjective" knowledge by an official who, objectively, had no reason to know. This is, in reality, a quibble. If a plaintiff proves some peculiar or unusual source, specially known to the defendant, then, by hypothesis, this is what the defendant, as a reasonable man, must take into account.

What *Harlow* eliminated altogether, as a matter of substance, was not knowledge, but subjective "malice," perhaps not spelling out malice sufficiently for those unfamiliar with the broad scope of the term, viz., a "bad" state of mind not related to knowledge. In addition, from the standpoint of procedure we read the court's strong condemnation of insubstantial suits against government officers as calling for application of the principle earlier voiced in *Franks v. Delaware,* ante, 438 U.S. at 171, 98 S.Ct. at 2684. A plaintiff, before commencing suit, must be prepared with a prima facie case of defendant's knowledge of impropriety, actual or constructive. In order to defeat a motion for summary judgment, or to impose upon the defendant the burdens of pretrial discovery, a plaintiff must show more than "a mere desire to cross-examine" but must furnish "[a]ffidavits or sworn or otherwise reliable statements of witnesses." Alternatively, but with a much higher burden than is borne by the plaintiff who opposes an ordinary summary judgment motion, a

plaintiff may seek permission for discovery, or avoid summary judgment, by making a persuasive showing that affirmative evidence would be available, and giving a valid excuse for non-production. To hold less would defeat the entire purpose of freeing government officials from having to defend insubstantial suits.

Our present difficulty is that the district court did not cite *Harlow*, and apparently applied the old rule. The record is complex, and we are not exactly sure just what is before us, and we think our most appropriate course is to remand the qualified immunity questions for reconsideration in light of this opinion. *See Harlow*, 457 U.S. at 819–20, 102 S.Ct. at 2739.

The order of the district court on counts 7, 8, 9, 10, 11, and 28 is reversed. Judgment is to enter for defendants other than Pool on count 28. Counts 7, 8, 9, 10, and 11 are remanded in light of this opinion.

## MEMORANDUM AND ORDER ON MOTION FOR REHEARING

*Per Curiam* Other than to repeat previous arguments plaintiff's motion for rehearing urges that we over-emphasized his statement that Pool was "disbarred ... on the basis of the conduct about which plaintiff complains in Count 28 ..." and that this disbarment made no reference to stealing his client's money. Plaintiff asserts that the theft was simply not included. Even were we to assume the thrust of this assertion, it would not help plaintiff.

Plaintiff does not deny that he authorized Pool to go to the box, or boxes, for money, but he would have it that Brown, as a co-conspirator with respect to evidence in the boxes, must know of, or be vicariously liable for, Pool's alleged subsequent misappropriation of funds.

In our earlier opinion we noted that plaintiff had not seen fit to respond to Brown's affidavit of ignorance (plaintiff's pleading, of course, not constituting such for summary judgment purposes) but felt that Brown had a burden of showing good faith, possibly unmet. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), has changed all that, and has placed a heavy burden on a plaintiff suing a government official to show an objective case in the first instance. By that test, to show that Brown knew Pool was not telling plaintiff what information he had had to disclose in order to obtain access to the money would be insufficient to make out a case he knew Pool was—if he was—planning partially to disobey plaintiff's instructions as to what to do with it.

The petition for rehearing is denied.