Robert G. THOMPSON, and others
similarly situated, Plaintiffs,

v.

COUNTY OF ROCK, City of Janesville,
and City of Beloit, Defendants.

No. 86–C–1–C.

United States District Court,
W.D. Wisconsin.

Nov. 24, 1986.

Jeff Scott Olson, Julian & Olson, Madison, Wis., for plaintiffs.

Daniel T. Kelley, City Atty., Beloit, Wis., Timothy J. Yanacheck, Straub & Schuch, Madison, Wis., for City of Beloit.

Charles H. Williams, Deputy Corp. Counsel, Janesville, Wis., for defendant Rock County.

Wald Klimczyk, Asst. City Atty., Janesville, Wis., Bradway A. Liddle, Jr., Madison, Wis., for City of Janesville.

## ORDER

CRABB, Chief Judge.

This is a civil action for monetary damages. Plaintiff alleges that he was twice arrested and his residence searched once pursuant to warrants that were invalid because issued by court commissioners who had not been duly authorized to issue arrest and search warrants, in violation of the Fourth and Fourteenth Amendments. Jurisdiction is present under 28 U.S.C. § 1343(3).

Before the court are separate motions for summary judgment from each of the three defendants, and plaintiff's motion for class certification. Based on the proposed findings of fact and admissions submitted by the parties, I find no genuine dispute as to the following material facts.

## FACTS

Plaintiff Robert G. Thompson is an adult resident of Rock County, Wisconsin. Defendants County of Rock, City of Janesville, and City of Beloit are municipal corporations located within the Western District of Wisconsin.

On March 2, 1981, the six circuit court judges for Rock County appointed James Van De Bogart and Charles Holznecht as court commissioners pursuant to Wis.Stat. § 757.68(2). Court commissioners may be empowered to perform any or all of the functions listed in Wis.Stat. § 757.69, which provides in relevant part:

(1) On authority delegated by a judge ... and with the approval of the chief judge of the judicial administrative district, a court commissioner appointed under s. 757.68 may:

.    .    .    .    .

(b) In criminal matters issue summonses, arrest warrants or search warrants....

.    .    .    .    .

(f) Issue warrants and capiases for those who do not appear as summoned.

The resolution of the Rock County judges appointing Van De Bogart and Holznecht, dated March 2, 1981, provided in relevant part that authority was delegated to the commissioners to "Issue warrants and capias for persons who do not appear as summoned." No specific mention was made in the resolution of authority to issue search warrants or arrest warrants for anyone other than those who do not appear as summoned. The resolution was never signed by the chief judge of the judicial administrative district.

Between March 2 and November 9, 1981, the court commissioners issued approximately 71 arrest and search warrants. The general procedure for obtaining these warrants began when law enforcement personnel, including Janesville and Beloit police officers and Rock County sheriff's deputies, would report their investigative findings to the Rock County district attorney's office. The district attorney's office would draft criminal complaints and warrants, which were then brought before a court commissioner for a determination of probable cause. Search and arrest warrants issued by the Rock County court commissioners were executed by various law enforcement agencies, including the Janesville and Beloit police departments and the Rock County sheriff's department.

Subsequent to the March 1981 resolution, commissioner Van De Bogart informed Assistant District Attorney William J. Hayes that Van De Bogart was authorized to perform all functions set forth in Wis.Stat. § 757.69, including the authority to issue warrants. On August 26, 1981, Hayes drafted a criminal complaint against plaintiff based on an investigation by Beloit police officers, and a proposed search warrant for 231 Roosevelt Avenue, Apartment 2, Beloit, Wisconsin, based on information supplied by the Janesville police depart-

ment. That same day, court commissioner Van De Bogart issued both the arrest warrant for plaintiff and the search warrant for 231 Roosevelt Avenue, Apartment 2. On August 27, 1981, plaintiff was arrested by a Beloit police officer. Participating in the arrest were officers of the Janesville and Beloit police departments and the Rock County sheriff's department, as well as members of the Rock County district attorney's office and the Wisconsin Department of Justice.

Pursuant to reports and information of the officers who executed the search warrant, Hayes drafted a second criminal complaint and second arrest warrant for plaintiff. On August 28, 1981, court commissioner Van De Bogart issued this second arrest warrant for plaintiff.

On October 2, 1981, the criminal complaint against plaintiff in case No. 81–CR–736 was dismissed by Rock County circuit court judge Mark J. Farnum on the ground that the August 26 arrest warrant was issued in excess of the authority granted to the court commissioner. As plaintiff left the proceeding before Judge Farnum, he was arrested by a Janesville police officer pursuant to the August 28 warrant. On March 15, 1982, circuit court judge John H. Lussow ruled that commissioner Van De Bogart had not been authorized to issue the August 28 arrest warrant against plaintiff in case No. 81–CR–912 because the March 1981 resolution of the Rock County judges had not been approved by the chief judge as required by Wis.Stat. § 757.69(1).

Also on October 2, 1981, another arrest warrant was issued for plaintiff by circuit court judge Edwin Dahlberg.

On October 5, 1981, Judge Farnum sent a letter to all circuit court judges, court commissioners, and the district attorney for Rock County. In pertinent part that letter stated:

... I checked our Resolution adopted by the Board of Rock County judges on March 2, 1981, and felt that it did not include authority to issue warrants in the

first instance but only where persons do not appear as summoned.

.    .    .    .    .

As you will note, the Order of Appointment proceeds under the authority of Sec. 757.68 Stats., which does no more than authorize the position. It then goes on to permit the exercise of all statutory duties. On the other hand the Resolution of the Board of Circuit Court Judges was specific in delegating only certain authority under Sec. 757.69 Stats., as set forth in the Resolution. Consequently, although the Order of Appointment is more broad in its language, it seems to me that we are probably bound by the Resolution from which the Order springs....

On November 9, 1981, the six circuit court judges of Rock County adopted a resolution delegating to the court commissioners all authority under Wis.Stat. § 757.-69. Specifically, the resolution authorized the commissioners to "[e]xercise all powers and perform all duties that are authorized for delegation by a judge under the provisions of Sec. 757.69(1)(a) through (h)." The authority to issue arrest and search warrants is contained in Wis.Stat. § 757.-69(1)(b).

The circuit court judges for Rock County are paid by the State of Wisconsin, and receive various health, medical, and retirement benefits paid for by the state.

This action was commenced on January 2, 1986.

## OPINION

The defendants have moved for summary judgment. Summary judgment is appropriate only if the pleadings, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the record and any reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Box v. A & P Tea Co.*, 772 F.2d 1372, 1375 (7th

Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986).

In this action plaintiff challenges both the issuance of search and arrest warrants by the Rock County court commissioners and the execution of those warrants by law enforcement agencies. Plaintiff predicates liability on 42 U.S.C. § 1983, bringing suit against three municipalities. The United States Supreme Court has held expressly that local governments are among the persons to whom § 1983 applies. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). In *Monell,* the Court explained the basis for municipal liability:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Id.* Plaintiff's claim is that the court commissioners in issuing the warrants, the district attorney's office in participating in their issuance, and the police and sheriff's departments in executing the warrants were all acting pursuant to the "custom" of the three defendant municipalities. Since, plaintiff alleges, those municipal customs deprived him of his constitutional rights, the county and cities should be held liable under § 1983.

All three defendants argue that no municipal custom existed of issuing or executing invalid search warrants, and that plaintiff has failed to show the "fault" necessary for municipal liability. Rock County further alleges that the court commissioners are not county employees, and that therefore it cannot be held liable for their conduct in any case. Janesville and Beloit both contend, in addition, that plaintiff has not been deprived of any constitutional right. Finally, Janesville argues that plaintiff's claim is time-barred.

In opposition to defendants' summary judgment motions, plaintiff contends that the court commissioners are county employees, that each municipality had established a custom of executing invalid warrants, that Rock County additionally had established a custom of issuing invalid warrants, that "fault" is not a prerequisite to municipal liability, that the underlying invalidity of the warrants deprived him of a constitutional right, and that the claim is not time-barred under the appropriate six year statute of limitations.

■ There are three basic elements necessary for municipal liability under *Monell:* there must be (1) deprivation of a constitutional right; (2) a municipal policy or custom; and (3) a showing that the deprivation was caused by the policy or custom. *See Powe v. City of Chicago,* 664 F.2d 639, 643 (7th Cir.1981). Before I consider whether these elements have been established in this case, there are two preliminary matters. Defendant Janesville has alleged that plaintiff's claims are time barred, and defendant Rock County has raised the question whether the court commissioners for Rock County are county or state employees.

## I. *Statute of Limitations*

Defendant Janesville contends that plaintiff's claim is time barred and must be dismissed on that basis. In cases brought pursuant to 42 U.S.C. § 1983, federal courts are directed to apply the most analogous state statute of limitations. 42 U.S.C. § 1988; *Saldivar v. Cadena,* 622 F.Supp. 949, 954 (W.D.Wis.1985). In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985), the United States

Supreme Court held that the applicable state statute of limitations should be that pertaining to injuries to the rights of a person.

Janesville contends that therefore the applicable Wisconsin statute is Wis.Stat. § 893.54(1), which provides a three year statute of limitations for "injuries to the person." However, this court held in *Saldivar* that Wis.Stat. § 893.53, which provides a six year statute of limitations for injuries to "character or rights," is the applicable statute.

> The Wisconsin statute governing actions to recover damages for an injury to "character or rights" is more closely analogous to the spirit of § 1983 than is the statute governing personal injury actions, and under *Garcia*, it is the appropriate statute of limitations to apply in § 1983 actions.

*Saldivar*, 622 F.Supp. at 955.

■ The alleged injuries in this case occurred between March 2 and November 9, 1981. The lawsuit was filed with the court in January 1986. Therefore, I conclude that this action is not barred by the statute of limitations.

Moreover, the Court of Appeals for the Seventh Circuit has held that *Wilson v. Garcia*, which found that the applicable § 1983 statute of limitations should be the state statute pertaining to injuries to the rights of a person, is not to be applied retroactively to § 1983 claims that accrued before the date of the *Garcia* decision. *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986); *Loy v. Clamme*, 804 F.2d 405

(7th Cir.1986). Prior to the decision in *Garcia*, the statute of limitations applicable to § 1983 claims in Wisconsin was the six year time period found in Wis.Stat. § 893.-93(1)(a), which governs statutory causes of action for which no other limitation is prescribed by law. *Saldivar*, 622 F.Supp. at 956; *Reese v. Milwaukee County Sheriff Department*, 505 F.Supp. 88, 89 (E.D.Wis. 1980). Consequently, even if Janesville were correct that the three year statute of limitations now is applicable, a Wisconsin plaintiff whose § 1983 cause of action accrued before *Garcia* was decided on April 17, 1985, nonetheless may file suit within six years of the date the cause of action accrued.[1] *See Anton*, 787 F.2d at 1146; *Loy*, at 408.

■ Plaintiff filed suit in this action in January 1986, which is within the time period of six years from the date the alleged injuries occurred. Therefore, even if a three year statute of limitations were applicable, as Janesville contends, this action is not time barred.

## II. *Court Commissioners*

There is no dispute among the parties that the circuit court judges for Rock County are state, not county, officials, and that the circuit judges appoint the court commissioners to handle court business.[2] The Wisconsin statute authorizing court commissioners provides that, in counties having a population of 100,000 or more, the county board may create full-time court commissioner positions; the number of positions and the salary are determined by the county board.[3] Wis.Stat. § 757.68(1). In addi-

---

1. Even assuming that the three year statute of limitations applies in Wisconsin following *Garcia*, the test established by the Court of Appeals for the Seventh Circuit would provide that a Wisconsin plaintiff whose § 1983 cause of action accrued prior to the *Garcia* decision could file a lawsuit within the shorter period of time of either six years from the date the injury occurred (using the statute of limitations in effect before *Garcia* ) or three years after the date of *Garcia* (using the statute of limitations in effect following that decision). *Anton*, 787 F.2d at 1146; *Loy*, at 408. In the present case, the shorter period of time is six years from the date of accrual of the cause of action.

2. Rock County proposed as conclusions of law that Wisconsin circuit court judges are state officers and not county officers, and that Wis. Stat. §§ 757.68 and 757.69 authorize circuit judges to appoint court commissioners to handle court business. Plaintiff agreed with these conclusions.

3. In counties having a population of 500,000 or more, the county board is required to establish at least one full-time court commissioner position. Wis.Stat. § 757.68(1)(b).

tion, the circuit judges for each county are authorized to appoint as many part-time court commissioners "as the proper transaction of business requires," subject to some statutory limits. Wis.Stat. § 757.-68(2). Both full-time and part-time commissioners are appointed by the circuit judges, and only judges have the authority to terminate them. Wis.Stat. § 757.68(1) and (2). Full-time commissioners are supervised by the chief judge, Wis.Stat. § 757.68(1), and the judges determine the extent of the authority, within statutory limits, that is vested in the court commissioners. Wis.Stat. § 757.69(1).

The parties dispute whether, given this framework, court commissioners are county or state officers. The Wisconsin courts appear to have addressed a similar question, though only once. In *State ex rel. Sheets v. Fay*, 54 Wis.2d 642, 196 N.W.2d 651 (1972), the Wisconsin supreme court found that, for purposes of the state retirement act, family court commissioners were county rather than state employees. 54 Wis.2d at 649–50. In reaching its determination, the court relied upon a number of factors. *Id.* at 649. First, the statutory scheme authorized family court commissioners "in each county" and "for such county." Second, while the judges appointed the family court commissioners, state law provided that the county board could place the position in the county civil service system by resolution. Third, the county paid the family court commissioners' salaries. And fourth, the county board was authorized by statute to "prescribe such other duties to be performed by him not in conflict with his duties as family court commissioner."

Not all of these factors are present in this case. First, the statutes authorizing court commissioners provide merely that "[i]n counties" or "[i]n each county" judges may appoint commissioners. Wis.Stat. § 757.68(1) and (2). The stronger language of the family court commissioner statute is not present. Second, while judges also appoint court commissioners, there is no authorization for counties to bring the positions within the county civil service sys-

tems. Third, and perhaps most important, the county board is not authorized to exercise any control over the court commissioners' duties as it was empowered to do with respect to the family court commissioners. On the other hand, the county does pay the salaries of court commissioners.

Wisconsin court commissioners are appointed by, supervised by, and may only be terminated by circuit judges, who are state officials. These same state officials have the sole discretion to determine what statutory duties the court commissioners will be authorized to perform. The only role for the county is the determination of the number of authorized full-time positions and the setting of court commissioners' salaries. The county exercises no control over what duties court commissioners perform or over how the commissioners perform those duties.

█ Under these circumstances, I find that court commissioners in Wisconsin are state officers and not county officers. Because they are state employees, a municipal policy or custom cannot be predicated upon their actions. Accordingly, Rock County's motion for summary judgment will be granted with respect to the issuance of warrants by the court commissioners.

### III. *Municipal Liability*

Because the court commissioners are not county officers, in determining whether the municipalities are liable under § 1983 I will look to the actions of the Rock County district attorney's office in participating in the issuance of the warrants and to the actions of the police and sheriff's departments in executing the warrants. As noted above, municipal liability under *Monell* requires that there be a deprivation of a constitutional right which was caused by a municipal policy or custom. Each of these issues—deprivation of a right, municipal policy or custom, and causation—will be addressed separately.

### A. *Deprivation of a Constitutional Right*

The cities of Janesville and Beloit contend that plaintiff suffered no deprivation

of a constitutional right because the warrants issued by the court commissioners were facially valid and because the warrants were issued on probable cause. Plaintiff counters that his rights under the Fourth and Fourteenth Amendments were violated because the warrants were not valid in fact and because the alleged existence of probable cause does not render the search and arrests lawful.

■ There is little doubt under Wisconsin law that the warrants as issued by the court commissioners were invalid in fact. The power to issue warrants under Wis. Stat. § 757.69(1) must be conferred upon court commissioners by express delegation. *State v. Loney,* 110 Wis.2d 256, 259, 328 N.W.2d 872 (Ct.App.1982), petition to review denied. The March 2, 1981 resolution of the circuit judges for Rock County did not delegate expressly the power to issue warrants. Therefore, the court commissioners, from March 2 to November 9, 1981, were without authority to issue arrest and search warrants. 110 Wis.2d at 260.[4]

The fact that the warrants were issued invalidly, however, does not end the inquiry into whether their issuance and execution violated plaintiff's constitutional rights. The United States Supreme Court, in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), found no unconstitutional deprivation of liberty where the plaintiff was arrested pursuant to a warrant that named him, even though the person actually sought by the police was the plaintiff's brother. *Id.* at 143, 99 S.Ct. at 2694. The Court reasoned that since the plaintiff had been arrested "pursuant to a facially valid warrant," no deprivation of a constitutional right had occurred. *Id.*

■ The Court of Appeals for the Seventh Circuit has stated that if a warrant "is valid on its face, its execution against the person named in the warrant does not violate the Fourth Amendment." *Johnson v. Miller,* 680 F.2d 39, 41 (7th Cir.1982). Conversely, warrants not valid on their face, as where identification of the person named is deficient, do give rise to an unconstitutional deprivation of liberty. *Powe v. City of Chicago,* 664 F.2d 639, 644 (7th Cir.1981).

Other circuit courts of appeals also have concluded that no deprivation of a constitutional right may be predicated upon the execution of a facially valid warrant. *See, e.g., Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1434 (10th Cir.1984), *vacated and remanded on other grounds,* — U.S. ——, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985) (no constitutional violation for arrest "on a warrant that appears on its face to be valid but later proves deficient"); *Krohn v. United States,* 742 F.2d 24, 26–27 (1st Cir. 1984) (no constitutional violation in execution of a facially valid warrant which is not known to be invalid). Moreover, as the Court of Appeals for the Ninth Circuit pointed out:

> According to the Restatement (Second) of Torts, an arrest is privileged if it is made pursuant to a warrant which is regular in form and which reasonably appears to have been issued by a court with jurisdiction. *See* Restatement (Second) of Torts, §§ 122–24 (1965); *accord* 32 Am.Jur.2d *False Imprisonment* § 81 (1982).

*Arnsberg v. United States,* 757 F.2d 971, 979 (9th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986).

---

**4.** I recognize that *State v. Verkuylen,* 120 Wis.2d 59, 352 N.W.2d 668 (Ct.App.1984), is in conflict with *Loney.* In *Verkuylen,* the court determined that the failure to expressly authorize the court commissioner to issue search warrants was "nothing more than a judicial oversight" that did not warrant suppression of the evidence. 120 Wis.2d at 61. However, I am persuaded by the appellate court's reasoning in *State v. Grawien,* 123 Wis.2d 428, 433 n. 3, 367 N.W.2d 816 (Ct.App.1985), petition to review denied, that

"*Loney* is the correct decision because it properly defers to the Wisconsin Supreme Court decisions on this question." In *Grawien,* the court relied primarily on *State v. Kriegbaum,* 194 Wis. 229, 215 N.W. 896 (1927), which held that a search pursuant to a warrant issued by a justice of the peace who had not been granted the power to issue such warrants was an unreasonable search and in violation of the Wisconsin Constitution.

I have found no case law pertaining to the facial validity or otherwise of warrants issued by judicial officers without authority to do so, and the parties have not brought any to my attention. The existing case law appears concerned primarily with defects in the identification of the person sought that are not apparent from the face of the warrant. *See, e.g., Baker,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433; *Powe,* 664 F.2d 639; *Johnson,* 680 F.2d 39. The Restatement (Second) of Torts, however, indicates that a warrant may be said to be facially valid "if it reasonably appears to have been issued by a court with jurisdiction." *Arnsberg,* 757 F.2d at 979.

■ I am persuaded that the warrants issued by the court commissioners for plaintiff's arrests and for the search of the residence were facially valid. There is no claim of any defect in the warrants other than the lack of authority vested in the court commissioners. The commissioners' lack of authority to issue the warrants was not apparent from the face of the warrants themselves. Rather, the court commissioners had been appointed by the circuit judges and were acting as judicial officers with apparent authority to do so. Under these circumstances, the warrants on their face would appear reasonably to have been issued by persons empowered to do so. Because these warrants were valid on their face, their "execution against the person named in the warrant does not violate the Fourth Amendment." *Johnson,* 680 F.2d at 41. Therefore, I conclude that plaintiff suffered no deprivation of a constitutionally protected right.

### B. *Municipal Policy or Custom*

Even if plaintiff had been deprived of a constitutional right, municipal liability under *Monell* requires that the deprivation be pursuant to a municipal policy or custom. 436 U.S. at 690, 98 S.Ct. at 2035. Plaintiff in this case has disavowed any allegation of municipal policy on the part of defendants, but contends that each defendant munici-

pality had established a custom of executing invalid warrants, and that Rock County also had established a custom of participating in the issuance of such warrants.

Rock County counters that issuing the warrants was a function of the judiciary, that the judicial officers involved were not county officials, and that the district attorney's office merely requested warrants from the available judicial officer and did not establish or control the procedure for issuing warrants. All defendants contend that any municipal custom concerning execution of warrants was simply a custom of executing those warrants issued by judicial officers, and not a custom of executing invalid warrants. Moreover, Janesville argues that there is no municipal custom of executing warrants because the execution of warrants is not a discretionary act but a statutory duty imposed on municipal law enforcement agencies.

■ A governmental policy "generally implies a course of action consciously chosen from among various alternatives." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). A municipal custom, by contrast, does not receive formal governmental approval through official channels. *Jones v. City of Chicago,* 787 F.2d 200, 204 (7th Cir.1986), citing *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Rather, a custom "generally implies a habitual practice or a course of action that characteristically is repeated under like circumstances." *Jones,* 787 F.2d at 204. A governmental custom may arise from a "regular, operating procedure," *id.,* or "a well-settled municipal practice" or "pervasive pattern." *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 870 (7th Cir.1983).

The underlying issue in this case in regard to municipal custom is whether the participation in issuance of warrants by the district attorney's office or the execution by the law enforcement agencies constituted governmental "custom." [5]

---

5. Since I have concluded previously that the court commissioners are state and not county

officials, the actions of the court commissioners

The actions of the Rock County district attorney's office alleged to constitute municipal custom consist of drafting the criminal complaints and proposed warrants from which the court commissioners issued the warrants. District attorneys in Wisconsin are constitutional officers, Wis. Const. Art. 6, § 4, charged with the prosecution of criminal actions. Wis.Stat. § 59.47. As part of their prosecutorial duties, district attorneys are mandated to issue criminal complaints. Wis.Stat. § 968.02(1). Once a complaint is issued by a district attorney, it must be presented to the appropriate judicial officer. Wis.Stat. § 968.02(2). Accordingly, the actions of the Rock County district attorney's office that plaintiff contends constitute municipal custom are statutorily-mandated duties of the office.

A similar situation is present with respect to execution of the warrants by the police and sheriff's departments. Arrest warrants issued in Wisconsin are directed to any law enforcement officer and expressly command the officer to arrest the defendant. Wis.Stat. § 968.04(3)(a)7. Similarly, a search warrant is a court order "directing a law enforcement officer to conduct a search." Wis.Stat. § 968.12(1). Any search warrant "must be executed and returned not more than 5 days after the date of issuance," or it shall be void. Wis. Stat. § 968.15. Thus, the actions of the Rock County sheriff's department and the Janesville and Beloit police departments in executing the arrest and search warrants issued by the court commissioners were undertaken in accordance with a statutory mandate.

■ I am not persuaded that non-discretionary duties imposed upon municipal officials by state statutes constitute local governmental "custom." Once a criminal complaint is issued by a district attorney, the district attorney is mandated to present it to a judicial officer. Once an arrest or search warrant is issued by a judicial officer, law enforcement officers are mandated to execute those warrants. In effect, therefore, plaintiff's argument is that each

in issuing the warrants cannot constitute a cus-

state law mandate with which a municipality complies represents a separate local governmental custom. I find this contention unpersuasive. To the extent that any municipal custom may be read into the actions of local officials complying with state law requirements, it would be merely a "custom" of municipal adherence to state statutory mandates. I cannot conclude, as plaintiff would like me to, that defendants engaged in a municipal custom of participating in the issuance of and executing invalid warrants.

Moreover, while the actions of the district attorney's office and the law enforcement agencies could be described as their "regular, operating procedure," *Jones*, 787 F.2d at 204, I am not convinced that they constitute a "custom" within the understanding of *Monell.* Indeed, the Court in *Monell* defined custom in part as a practice " 'not authorized by written law.' " 436 U.S. at 691, 98 S.Ct. at 2036, quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970). I conclude that because the actions of the district attorney's office and the law enforcement agencies were statutorily mandated rather than the result merely of local practice, and because "custom" generally implies some practice "not authorized by written law," no municipal custom of the defendants has been established with regard to issuance or execution of the warrants issued by the court commissioners.

### C. *Causation*

Even were I to conclude that defendants followed a municipal "custom" of complying with the state laws of criminal procedure, *Monell* nonetheless requires that the custom be "responsible" for the alleged deprivation of rights. 436 U.S. at 690, 98 S.Ct. at 2035. Municipal liability under § 1983 means that "[a]t the very least there must be an affirmative link between the [custom] and the particular constitutional violation alleged." *Tuttle*, 105 S.Ct. at 2436. This "affirmative link" require-

tom of Rock County.

ment is most often interpreted as one of causation. *See, e.g., Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985) ("Proximate causation between the municipality's policy or custom and the plaintiff's injury must be present."); *Powe,* 664 F.2d at 650 ("... under *Monell,* the crucial question is whether the unconstitutional acts complained of were *caused* by a policy or custom of the municipality.") (emphasis in original). As the Court of Appeals for the Seventh Circuit has explained:

> We take *Tuttle's* "affirmative link" requirement to mean that there must be some knowledge or an awareness—actual or imputed—of the custom and its consequences showing the municipality's approval, acquiescence, or encouragement of the alleged unconstitutional violation.

*Jones,* 787 F.2d at 204.

The "affirmative link" requirement is particularly strong where the custom itself does not establish any wrongdoing on the part of the municipality. *Id.* In such a case, "there must be evidence of a course of events or circumstances that permit an inference of deliberate indifference or tacit authorization of the offensive acts." *Id.* at 205; *see also Lenard v. Argento,* 699 F.2d 874, 886 (7th Cir.), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983).

If a municipal custom were present in this case, it would be one of compliance with state criminal procedure mandates. Such a "custom" clearly would not establish any wrongdoing on the part of the municipalities. There is nothing in the facts that would indicate defendants' deliberate indifference to or tacit authorization of the use of invalid warrants. Nor is there anything in the facts tending to show that defendants approved, acquiesced in, or encouraged the use of invalid warrants.

At worst, the facts only establish that defendants did not independently verify the authority of the court commissioners to issue arrest and search warrants. Municipal liability for such inaction attaches "only when there is an extremely high degree of culpability." *Lenard,* 699 F.2d at 885; *Jones,* 787 F.2d at 205. I cannot conclude that defendant municipalities may be held liable for damages because the district attorney's office, the sheriff's department, and the police departments did not conduct independent investigations of the actual authority of the appointed court commissioners to carry out the functions of issuing search and arrest warrants.

> "No municipality may be held liable for its indifference to the mere *possibility* of a constitutional deprivation. Rather the plaintiff must show the municipality was aware either of actual deprivations or of such a strong likelihood of imminent (though unrealized) deprivations that any reasonable person would have taken preventative measures."

*Jones,* 787 F.2d at 205, quoting with approval the district court opinion, *Jones v. City of Chicago,* 608 F.Supp. 994, 1000 (N.D.Ill.1985) (emphasis in original). If I were to find defendants liable in this case, it could only be for their indifference to the mere possibility of a constitutional deprivation. Such a result is barred under current case law. Accordingly, I find that even if there were a municipal custom on the part of defendants of participating in the issuance of and of executing the warrants issued by the court commissioners, such custom has no "affirmative link" with the alleged constitutional deprivation suffered by plaintiff. The deprivation alleged by plaintiff was not caused by defendant municipalities' actions.

### IV. *Class Certification*

Plaintiff has moved for class certification. Because I will grant summary judgment to defendants, plaintiff's motion will be denied as moot.

### ORDER

IT IS ORDERED that defendants' motions for summary judgment are GRANTED. Plaintiff's motion for class certification is DENIED as moot. The Clerk of Court is directed to enter judgment for defendants.