## COMMONWEALTH *vs.* TERRY L. WILLIAMS.

No. 04-P-1092.

Suffolk. March 14, 2005. - October 28, 2005.

Present: GELINAS, BROWN, & DUFFLY, JJ.

*Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses. *Evidence,* Testimonial statement.

At a criminal trial, the admission in evidence of an unavailable witness's statements, without the opportunity for cross-examination of the declarant, violated the defendant's rights under the confrontation clause of the Sixth Amendment to the United States Constitution, where the statements were elicited by police interrogation and were, therefore, per se testimonial [11-13]; moreover, the error, which was sufficiently significant in the context of the trial to make plausible an inference that the jury's result might have been otherwise but for the error, created a substantial risk of a miscarriage of justice and required reversal of the verdict [13-14].

COMPLAINT received and sworn to in the Brighton Division of the District Court Department on February 11, 2002.

A pretrial motion to admit evidence was heard by *Mary Ann Driscoll,* J., and the case was tried before *Robert C. Rufo,* J.

*Andrew S. Crouch* for the defendant.

*Timothy M. Pomarole,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. The defendant, Terry L. Williams, was convicted, after a District Court jury trial, of assault and battery. The defendant contends that the trial judge, in admitting the victim's statements as excited utterances, abused his discretion and violated the defendant's rights under the confrontation clause of the Sixth Amendment to the United States Constitution. He also argues that a pretrial bench conference conducted outside of his presence violated his right to self-representation.

*The victim's statements.* Officers Boyle and Kelley of the Boston police department responded to a 911 call reporting a

fight between a male and a female in an apartment in the Brighton section of Boston. On arrival at the apartment building, they observed that one of the outside entryway's glass doors had been shattered. As the officers entered the first floor hallway, the defendant approached the officers and stated that "nothing was going on" and that he had broken the glass door. The defendant had blood on his clothing and a bump on his head. He also had cuts and scratches (some of which were bleeding) on his head, arms, and face. Officer Boyle testified that the defendant, in response to questions, "didn't have any answers . . . [he] seemed like he was nervous. He was shaken . . . [h]e couldn't really give [the officers] any answers." The two officers talked to the defendant together for "five, ten minutes."

Officer Boyle then went to locate the apartment in which the disturbance had occurred, while Officer Kelley stayed with the defendant. Officer Boyle located the apartment on the second floor and discovered the victim, Bobby Jean Horsley, and another woman present in the apartment. Officer Boyle described Horsley as "shaken . . . very upset . . . crying, teary eyed, red eyed." Asked if he had any conversation with Horsley, Officer Boyle responded that he "asked her what happened and why . . . she called 911." In response to this and other questions, Horsley detailed events leading up to the call to the police. She informed Officer Boyle that the incident began when she and the second woman wished to leave the apartment and the defendant refused to allow them to do so. She stated that the defendant blocked the door and began attacking her, grabbing her by the neck and, eventually, stabbing her in the hand. She also provided Officer Boyle with the defendant's full name. She told Officer Boyle that she had washed the knife used by the defendant to stab her. The officer retrieved the knife from the kitchen sink.

At trial, when asked if Horsley had any visible injuries, Officer Boyle stated that she had "just blotches around her neck and around her face area . . . [and a] little, a cut on her hand . . . [it was bleeding] a little bit . . . she was covering it up with a . . . towel." Asked on cross-examination if he offered Horsley medical attention, Officer Boyle testified that he "asked her if she wanted an ambulance and she said no." Officer Boyle

also testified, in response to a query made by the defendant on cross-examination regarding any physical pain that Horsley might have been enduring, that "she seemed alright."

Officer Boyle returned to Officer Kelley and the defendant in the downstairs hallway and placed the defendant under arrest "for [what] happened upstairs." After the defendant was placed into the custody of other officers, Officers Boyle and Kelley returned to Horsley in the apartment. Officer Kelley testified that during this second interview with Horsley, he "wanted to hear the story that she related to Officer Boyle" and asked her what had happened. She largely repeated what she had told Officer Boyle earlier regarding the specifics of the physical confrontation. Officer Kelley stated that Horsley did not say that she was in any pain and that she declined medical attention.

Horsley failed to appear at trial.[1] There was no showing that she had been available for pretrial cross-examination. During the trial, the defendant testified that Horsley was the aggressor. According to the defendant, after he accused Horsley of stealing money from him, she hit him twice with a vase. Despite this sudden attack, the defendant testified that he never struck Horsley.

The defendant argues that Horsley's hearsay statements to the police were improperly admitted, in violation of his right to confront the victim, thus running afoul of *Crawford* v. *Washington*, 541 U.S. 36, 68 (2004), which proscribes the admission of testimonial evidence without a showing of unavailability and an opportunity for prior cross-examination. The defendant also argues, in the alternative, that Horsley's statements to the police were not properly admitted as excited utterances.

Prescinding from the question whether the hearsay statements were excited utterances, we agree with the defendant that Horsley's statements were inadmissible as violative of his rights under the confrontation clause of the Sixth Amendment to the

---

[1]Horsley was not called as a witness. By way of a motion in limine, the prosecutor moved to admit the testimony of the officers as to Horsley's statements, stating to the court, "since I only have a police officer, my ability to even present a case would depend on . . . the admissibility of statements made by the victim." As in *Commonwealth* v. *Rodriguez*, 445 Mass. 1003, 1003 (2005), the record does not suggest whether Horsley was unavailable, and if so, for what reason.

United States Constitution.[2] We conclude that, because the statements were elicited by police interrogation and were, therefore, per se testimonial, the admission of the statements, without the opportunity for cross-examination of the declarant, violated the confrontation clause of the Sixth Amendment to the United States Constitution. *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 13, 17 (2005).

"[Police] interrogation must be understood expansively to mean all law enforcement questioning related to the investigation or prosecution of a crime." *Id.* at 8. "This includes 'investigatory interrogation,' such as preliminary fact gathering and assessment whether a crime has taken place." *Id.* at 9. Statements made in response to police questioning are per se testimonial unless the questioning was of an "emergency" nature, meant "to secure a volatile scene or to establish the need for or provide medical care." *Id.* at 3, 9. The determination whether police are engaged in emergency questioning designed to address medical needs or to secure a volatile scene is made by analyzing "objective circumstances," applying "an objective standard." *Id.* at 10. When statements are determined to be per se testimonial, "[n]o further analysis is needed. The statements are inadmissible unless the declarant testifies at trial or formally is unavailable and was previously subject to cross-examination." *Id.* at 9.

Here, Officer Boyle's initial questioning of Horsley was not for the purpose of securing a volatile scene. The defendant was with Officer Kelley in the downstairs hallway. Horsley's initial statements came in response to Officer Boyle's general, preliminary fact queries as to what had occurred. Nothing in the testimony or in the objective circumstances of the interview with Officer Boyle indicates that the situation was volatile, as the defendant was in the control of another officer and not present at the scene. When Horsley repeated the statements to Officer Kelley, the defendant was already under arrest. Moreover, as noted, Horsley's statements were not made in

---

[2]"Whether some out-of-court statements are admissible under exceptions to the hearsay rule does not change whether admitting them would violate the confrontation clause as newly articulated by *Crawford*." *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 14 (2005).

response to Officer Boyle's offer of medical attention, or to Officer Kelley's inquiries concerning her medical condition.[3]

Although the defendant did not object at trial to the admission of the statements on the basis that he was deprived of his right to confront Horsley, we conclude that the admission of the statements created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Foley*, 445 Mass. 1001, 1001-1002 (2005) (applying substantial risk of miscarriage of justice standard because confrontation clause challenge not preserved at trial).

"To determine whether an error created a substantial risk of a miscarriage of justice, we consider the strength of the Commonwealth's case against the defendant (without consideration of any evidence erroneously admitted), the nature of the error, whether the error is sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error, and whether it can be inferred from the record that counsel's failure to object was not simply a reasonable tactical decision." *Commonwealth* v. *Wilson*, 49 Mass. App. Ct. 429, 433 (2000). (Quotations and citations omitted.)

Without the hearsay evidence, the Commonwealth's case rested upon the fact that the officers were responding to a 911 call regarding a fight between a male and a female; the officers' observations of the defendant (including his demeanor, his statement that "nothing was going on," and his injuries); the defendant's admission to having broken the glass door; and Horsley's injuries and demeanor. The Commonwealth's case cannot be regarded as "one in which the evidence pointed overwhelmingly to guilt." *Ibid.*, quoting from *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 22 (1986). Without Horsley's detailed version of events, and with the defendant's denial, the jury would necessarily have had to engage in conjecture as to what had occurred. "[W]e are unable to conclude that [the] inadmissible testimony did not have a material influence upon the jury's verdict." *Commonwealth* v. *Wilson, supra* at 434. As

---

[3]The relatively minor nature of Horsley's injuries and the fact that she did not objectively appear to be in appreciable pain are factors that further support the conclusion that the focus of the officers' questions was the investigation of the crime, not the securing of necessary emergency medical care.

we reverse on the basis of the defendant's first contention, we need not address the defendant's remaining claims on appeal.

*Judgment reversed.*

*Verdict set aside.*