**Terry L. WILLIAMS, Plaintiff,**

v.

**CITY OF BOSTON, et al., Defendants.**

**Civil Action No. 10–10131–PBS.**

United States District Court,
D. Massachusetts.

March 24, 2011.

---

Terry L. Williams, Norfolk, MA, pro se.

Alexandra B. Alland, Lisa Skehill Maki, City of Boston Law Department, Boston, MA, for defendants.

### ORDER

PATTI B. SARIS, District Judge.

"ADOPTED without Objection" [39] Report and Recommendation. Action on motions: #14 Allowed in Part, Denied in Part; #29 Allowed in Part, Denied in Part.

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

This action arises out of the arrest, prosecution and conviction of the plaintiff, Terry L. Williams ("Williams"), for an assault and battery which Williams claims he did not commit. Following the reversal of his conviction and the dismissal of the criminal charges against him, Williams brought this action *pro se* against the defendants, the City of Boston ("City"), Boston police officers John Boyle ("Boyle") and William Kelley ("Kelley"), and various unnamed supervisors in the Boston Police Department (the "John Doe defendants"), for alleged violations of his constitutional and state law rights. By his Complaint, Williams has asserted claims against all of the defendants for violations of his federal civil rights under 42 U.S.C. § 1983 ("Section 1983") (Counts I–VI). He also has asserted claims against Boyle, Kelley and the John Doe defendants for malicious prosecution under state law (Count VII) and against the City for negligence under the Massachusetts Tort Claims Act ("MTCA") (Count VIII).

The matter is presently before the court on the "Defendant, City of Boston's Motion to Dismiss" (Docket No. 14) and on the "Defendants, William Kelley and John Boyle's Motion to Dismiss the Plaintiff's Complaint" (Docket No. 29). By its motion, the City is seeking dismissal, pursuant to Fed. Civ. P. 12(b)(6), of the federal civil rights claim asserted against it in Count VI and the negligence claim asserted against it in Count VIII. Kelley and Boyle, by their motion, are seeking dismissal, pursuant to Fed.R.Civ.P. 12(b)(6), of the federal civil rights claims asserted against them in Counts I–IV and the malicious prosecution claim asserted against them in Count VII.

As detailed below, Williams has withdrawn his federal civil rights claim against the City due to lack of evidence, leaving only his claim for negligence against that defendant pursuant to the MTCA. Because the City has not demonstrated that

Williams has failed to state a negligence claim against it, this court recommends to the District Judge to whom this case is assigned that the City's motion be ALLOWED as to the civil rights claim (Count VI) and DENIED as to the negligence claim (Count VIII).

With respect to the individual police officer defendants' motion to dismiss, this court recommends that the motion be ALLOWED IN PART and DENIED IN PART. Specifically, this court recommends for the reasons detailed below that the plaintiff's claims for improper investigation and false arrest asserted against Boyle and Kelley in Count I, and the false arrest claim asserted against the officers in Count II be dismissed for failure to state a claim, but that the motion otherwise be denied.

## II. STATEMENT OF FACTS[1]

When ruling on a motion to dismiss brought under Fed.R.Civ.P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences. *See Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir.1999). Where, as here, the plaintiff is proceeding *pro se,* the court must construe his allegations liberally. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (a *pro se* complaint, however inartfully pleaded, must be liberally construed). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless

the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint.'" *Id.* (quoting *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993)).[2] Applying these standards to the instant case, the relevant facts are as follows.

### The Plaintiff's Arrest

The events giving rise to this action began on February 9, 2002, when Boyle and Kelley allegedly responded to two separate 911 calls from an apartment building located at 1431 Commonwealth Avenue in Brighton, Massachusetts. (Compl. (Docket No. 1) at 5–6).[3] The plaintiff claims that one of the calls concerned domestic violence, but that the second call, concerning an incident which took place in apartment six, made no mention of domestic violence or an incident involving a stabbing. (*Id.*). He further claims that following their arrival at the apartment building, the officers proceeded to investigate the call regarding apartment six, but failed to investigate the domestic violence call. (*Id.* at 5, 11–12).

When the defendant police officers entered the apartment building, they encountered Williams in the hallway. (*Id.*). Allegedly, Boyle asked the plaintiff what had

---

1. While the facts alleged by the plaintiff in his Complaint differ from those found by the state trial court in connection with Williams' state prosecution, *see Commonwealth v. Williams,* 65 Mass.App.Ct. 9, 836 N.E.2d 335 (2005), for present purposes, this court relies on Williams' Complaint and related documents.

2. This court has considered the documents submitted by the plaintiff in support of his

opposition to Kelley's and Boyle's motion to dismiss ("Pl. Ex. _____.") (Docket No. 38) to the extent such consideration is consistent with the relevant standard.

3. Since the plaintiff uses the same paragraph numbers in various sections of his Complaint, citations to the Complaint refer to page numbers rather than paragraph numbers.

happened and the plaintiff replied that nothing had happened. (*Id.*). Boyle then informed Williams that the police had received a 911 call regarding a man and a woman fighting. (*Id.*). Williams claims he told Boyle and Kelley that he had been in an argument with a woman in apartment six, but had not hit her. (*Id.*). Allegedly, the plaintiff also stated that the woman had hit him with a vase, but that he did not wish to press charges against her. (*Id.*).

Following the initial exchange between Williams and the police officers, Boyle allegedly insisted on knowing whether the plaintiff was on probation or parole. (*Id.* at 7). When Williams revealed that he was on parole, Boyle allegedly insisted that the plaintiff reveal the nature of his offense. (*Id.*). Although Williams maintained that his parole status had nothing to do with the current situation, he nevertheless told Boyle and Kelley that he was on parole from a second degree murder sentence. (*Id.*).

According to Williams, Boyle then went upstairs to apartment six to conduct an investigation, leaving the plaintiff downstairs in the hallway with Kelley. (*Id.* at 7–8). By the time Boyle returned downstairs, two other police officers had arrived. (*Id.*). Boyle allegedly instructed Kelley to place Williams under arrest. (*Id.* at 8). When Williams asked why he was being arrested, Boyle allegedly replied that "the woman upstairs said you stabbed her." (*Id.*). The plaintiff claims that Boyle's statement was false and that he had not committed a crime. (*Id.*). He also claims that Boyle did not respond when the plaintiff asked why the officer had not brought the woman downstairs to identify him. (*Id.*). Instead, Boyle and Kelley allegedly left the building, and the plaintiff was taken into custody by the two remaining police officers. (*Id.*).

Williams contends that there was no evidence that he had committed a crime, and

that Boyle fabricated a description of the incident in his police report. (*Id.* at 9–11). In particular, Williams claims that Boyle falsely reported as follows:

> Officer Boyle then went up stairs to apartment 6 and spoke with the victim who stated that she and her friend were trying to leave the apartment and the suspect wouldn't let them, then the suspect threw the victim down into the kitchen and while they were fighting the suspect stabbed the victim in the hand with a kitchen knife. The victim then told Officer Boyle that the suspect left the apartment after the fight for a few minutes but tried to return. The victim and the witness refused to let him back in.

(Pl. Ex. E; *see also* Compl. at 10–11).

Williams alleges that despite the lack of evidence implicating him in a crime, on February 9, 2002, Boyle notified the plaintiff's parole officer that the plaintiff had been arrested for stabbing a female. (Compl. at 9). Williams claims that the parole officer lodged a parole detainer against him based on Boyle's false statements. (*Id.*).

### State Trial Court Proceedings

On February 11, 2002, Williams was arraigned on charges of breaking and entering in the night time with intent to commit a felony; assault and battery with a dangerous weapon; and assault and battery. (*Id.*). Neither Boyle nor Kelley appeared at the arraignment. (*Id.*). Additionally, Williams contends that no victim appeared to allege that he had stabbed her, and the prosecution was not provided with any evidence indicating that the plaintiff had committed a crime. (*Id.*). In particular, the plaintiff claims that there were no written or tape recorded statements from the victim or any witnesses, and no photographs depicting any bruises or stab wounds. (*Id.* at 9, 12).

On March 27, 2002, the Commonwealth filed a "Motion *in Limine* to Admit Spontaneous Utterances" in connection with the pending criminal case against Williams. (Pl. Ex. L). Therein, the prosecutor argued that the alleged stabbing victim and a civilian witness had made "spontaneous utterances" to Boyle and Kelley shortly after the police officers arrived at 1431 Commonwealth Avenue to investigate a report of domestic violence. (*Id.*). The prosecutor requested that the trial court admit the testimony of the police officers regarding those statements pursuant to the excited utterance exception to the hearsay rule. (*Id.*). Following a hearing on July 31, 2002 at which Kelley testified, the trial court allowed the motion. (Compl. at 10, 12). Williams claims that Kelley's testimony at the hearing was false, and that the motion should not have been allowed. (Compl. at 10).

The criminal trial against Williams commenced on July 31, 2002, and was continued on March 5 and 6, 2003. (*Id.* at 11). The victim did not appear at trial. *Commonwealth v. Williams*, 65 Mass.App.Ct. 9, 11, 836 N.E.2d 335, 337 (2005). However, consistent with the court's order on the motion *in limine*, both Kelley and Boyle were allowed to testify regarding statements that had been made to them by the victim. (Compl. at 11, 13). Williams contends that the success of the prosecution's case against him was dependent upon the defendants' testimony, and that their testimony was false. (*Id.* at 13). He further contends that as a result of the defendants' false testimony, the jury found him guilty on the assault and battery charge. (*Id.*).

The trial court sentenced Williams to two and a half years at the South Bay House of Correction, with 382 days credit for time served. (Compl. at 13; Pl. Ex. G–1). Williams filed a timely notice of appeal. (Compl. at 13). However, on May 11, 2004, before he had an opportunity to meet with his appellate counsel and pursue his appeal, Williams completed his sentence at the House of Correction. (*Id.* at 13–14).

### Parole Revocation Proceedings

Due to the parole detainer that had been lodged against him on February 9, 2002, Williams was not released into the community following the completion of his sentence on the assault and battery conviction. (*Id.*). Instead, the plaintiff was transferred to the Classification Center at MCI Concord to await a parole revocation hearing. (*Id.* at 14). An initial parole revocation hearing allegedly took place on June 21, 2004 before two members of the Massachusetts Parole Board. (*Id.*). Williams claims that his parole was temporarily revoked pending a final hearing before the full Parole Board, which was scheduled for September 7, 2004. (*Id.*).

On August 24, 2004, Williams allegedly met with a hearing examiner from the Massachusetts Parole Board. (*Id.*). According to the plaintiff, the hearing examiner told him that he had little chance of being paroled in light of his conviction on the assault and battery charge. (*Id.*). When Williams told the hearing examiner that he was contesting his conviction on appeal and could prove his innocence, the examiner allegedly suggested that Williams postpone the parole revocation hearing pending the outcome of the appeal. (*Id.* at 15). Williams agreed with the hearing examiner's advice and signed an agreement to postpone the hearing. (*Id.*).

### State Appellate Proceedings

Subsequently, Williams pursued his appeal of the assault and battery conviction before the Massachusetts Appeals Court, asserting, among other things, that the trial judge had abused his discretion and violated the plaintiff's rights under the confrontation clause of the Sixth Amendment by admitting the victim's statements

as excited utterances. *Williams*, 65 Mass. App.Ct. at 9, 836 N.E.2d at 336. Oral argument took place on March 16, 2005, and on October 28, 2005, the Appeals Court issued a decision reversing Williams' conviction and setting aside the jury verdict against him. *Id.* at 14, 836 N.E.2d at 339. Specifically, the Appeals Court determined that the police officers' testimony regarding the victim's statements was "inadmissible as violative of [Williams'] rights under the confrontation clause of the Sixth Amendment to the United States Constitution[,]" and that "the admission of the statements created a substantial risk of a miscarriage of justice." *Id.* at 11–13, 836 N.E.2d at 338–39. Because the Appeals Court found that reversal was warranted based on Williams' Sixth Amendment argument, it declined to address his remaining claims on appeal. *Id.* at 13–14, 836 N.E.2d 339.

Williams alleges that the prosecution had one year to retry him for assault and battery, but that it failed to do so. (Compl. at 16). Accordingly, in December 2006 and again in January 2007, Williams filed motions to dismiss the assault and battery charges against him. (*Id.*). The plaintiff claims that his motions were ignored and that he was forced to seek an appointment of counsel to assist him in filing a new motion to dismiss with prejudice. (*Id.*). That motion was allowed on May 23, 2007. (*Id.*). However, Williams still had to face a parole revocation hearing. (*Id.*). It is unclear from the record whether that hearing has taken place.

Additional factual details are described below to the extent they are relevant to this court's analysis.

### III. ANALYSIS—CITY OF BOSTON'S MOTION TO DISMISS

Williams has brought claims against the City for violations of his constitutional rights pursuant to Section 1983 (Count VI) and for negligence under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258 ("MTCA") (Count VIII). By its pending motion, the City contends that both claims should be dismissed for failure to state a claim. As detailed in his memorandum in opposition to the City's motion, Williams has withdrawn his Section 1983 claim against the City. (Pl. Opp. to City (Docket No. 25) at 3). Accordingly, this court's analysis is directed only to the remaining negligence claim. For the reasons that follow, this court finds that the City's motion to dismiss that claim should be denied.

### A. Motion to Dismiss Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party. *Cooperman*, 171 F.3d at 46. Dismissal is only appropriate if the pleadings, so viewed, fail to support " 'a plausible entitlement to relief.' " *Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009). " 'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.' " *Id.* (quoting *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937,

1949, 173 L.Ed.2d 868 (2009)) (internal citations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Ashcroft*, 129 S.Ct. at 1950). "This second principle recognizes that the court's assessment of the pleadings is 'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.' " *Id.* (quoting *Ashcroft*, 129 S.Ct. at 1950) (internal quotations and citation omitted; alterations in original).

**B. *Count VIII: Claim for Negligence***

In Count VIII of his Complaint, Williams claims that the City should be held liable under the MTCA for the negligence of Boyle and Kelley in investigating the 911 calls and in arresting and initiating criminal process against Williams for a crime he did not commit without first obtaining a statement, written complaint or identification from the victim. He also claims that the City should be held liable for the negligence of the John Doe defendants in failing to adequately supervise Boyle and Kelley during their investigation. (*See* Compl. at 27–28). The City has moved to dismiss this claim on the grounds that it is entitled to immunity, pursuant to Section 10(j) of the MTCA, for claims based on its negligence in failing to adequately train or supervise its employees. (*See* City's Mem. (Docket No. 15) at 8–9). However, the City has misconstrued Williams' claim and has failed to show that Section 10(j) applies to this case. Therefore, this court recommends that the motion be denied.

■ As an initial matter, Williams is not claiming that the City was negligent in training and supervising its employees. Rather, Williams is seeking to hold the City directly liable, pursuant to the MTCA, for the negligent acts of its police officers and their supervisors in connection with the plaintiff's arrest on February 9, 2002. Section 2 of the MTCA provides in relevant part that "[p]ublic employers shall be liable for injury ... caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances...." Mass. Gen. Laws ch. 258, § 2. Thus, "the City could be liable under [the MTCA] for the negligence of defendant officers acting within the scope of their duty." *Lewis v. Kendrick*, 944 F.2d 949, 953 (1st Cir.1991).

■ Section 10(j) of the MTCA does not render the City immune from suit based on the allegedly negligent acts of its officers. Section 10(j) provides that a public employer is immune from suit for

> any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

Mass. Gen. Laws ch. 258, § 10(j). Thus, "the principal purpose of § 10(j) is to preclude liability ... for failures to prevent or diminish harm." *Ward v. City of Boston*, 367 F.Supp.2d 7, 14 (D.Mass.2005) (alteration, quotation and citation omitted). In the instant case, Williams is seeking to hold the City liable, not for its employees' failed efforts to prevent or diminish harm, but for harm allegedly caused by the affirmative conduct of its officers while acting within the scope of their employment. Therefore, the City is not immune from suit pursuant to Section 10(j) of the

MTCA, and its motion to dismiss Williams' negligence claim should be denied.

## IV. ANALYSIS—KELLEY'S AND BOYLE'S MOTION TO DISMISS

Kelley and Boyle are also seeking to dismiss each of the claims asserted against them in Counts I–IV and Count VII of the plaintiff's Complaint. For the reasons that follow, this court recommends that their motion be allowed with respect to Count I and the false arrest claim included in Count II, but denied with respect to the remaining claims.

### A. Count I: Claim for Improper Police Investigation

In Count I of his Complaint, Williams claims that Boyle and Kelley violated his civil rights under Section 1983 by conducting an improper investigation at 1431 Commonwealth Avenue on February 9, 2002, which led to his unlawful arrest. In particular, Williams alleges that the defendants acted unlawfully by interviewing the alleged victim and witness outside his presence, arresting the plaintiff without bringing the alleged victim downstairs to identify him, and focusing their investigation on only one of the two 911 calls that were made from 1431 Commonwealth Avenue. (Compl. at 17–18). The defendants have moved to dismiss this claim on the grounds that Williams has failed to identify an actionable constitutional violation. This court agrees that Williams has failed to state a claim for violation of his constitutional rights, and that Count I of his Complaint should be dismissed.

### Failure to Allege a Constitutional Violation

■ Williams has brought his claim for improper investigation under 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and

"second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir.1997), cert. denied, 522 U.S. 819, 118 S.Ct. 71, 139 L.Ed.2d 32 (1997). In the instant case, there is no dispute that Kelley and Boyle were acting under color of state law at all relevant times. At issue is whether they deprived Williams of his constitutional rights by failing to conduct a more thorough investigation prior to the plaintiff's arrest.

■ The failure of police officers to conduct an adequate investigation is not sufficient to state a civil rights claim under Section 1983 "unless there was another recognized constitutional right involved." Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir.1985). See also Maness v. D.L. Runnels, No. CIV–S–06–0409 FCD KJM P, 2009 WL 1155670, at *4 (E.D.Cal. Apr. 29, 2009) (slip op.) ("To the extent petitioner believes police officers did not adequately investigate [his crime], petitioner fails to state a claim upon which relief can be granted because he has no constitutional right to a police investigation, adequate or otherwise."). Therefore, the alleged deficiencies in the defendants' investigation, without more, are not actionable.

### Claim for False Arrest

Williams argues that his claim is not based simply on the defendants' failure to conduct an adequate investigation, but rather is based on their failure to establish probable cause to justify his arrest. (See Pl. Opp. Mem. (Docket No. 37) at 19–24). However, to the extent Count I alleges a claim for false arrest, this claim is time-barred and must be dismissed.

■ Because "Section 1983 does not contain a built-in statute of limitations[,]" "a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period govern-

ing personal injury causes of action." *Nieves v. McSweeney,* 241 F.3d 46, 51 (1st Cir.2001). Under Massachusetts law, the limitations period for personal injury claims is three years. *See id.;* Mass. Gen. Laws ch. 260, § 2A. Accordingly, the three-year period applies to Williams' false arrest claim.

▮▮▮▮ While the length of the statute of limitations is based on state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007). Ordinarily, under federal law, a cause of action for false arrest, "where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 397, 127 S.Ct. at 1100. In the instant case, this would be February 11, 2002, at the latest, the date on which Williams claims to have been arraigned. (Compl. at 9). Because the plaintiff's lawsuit was not commenced until January 25, 2010, his false arrest claim is untimely. Accordingly, this court recommends that Count I of the Complaint be dismissed.

**B. *Count II: Claims for False Arrest and Malicious Prosecution***

In Count II of his Complaint, Williams has asserted claims against Boyle and Kelley for false arrest and malicious prosecution under Section 1983. For the reasons detailed above, this false arrest claim is time-barred and should be dismissed. The defendants also contend that Williams cannot maintain a claim for malicious prosecution under Section 1983 because state law provides an adequate remedy. (*Id.* at 10). However, this argument is insufficient to warrant the dismissal of Williams' malicious prosecution claim at this juncture.

▮▮▮▮ "It is perfectly clear that the Due Process Clause cannot serve to ground [a] federal malicious prosecution claim." *Nieves,* 241 F.3d at 53. In particular, "[n]o procedural due process claim can flourish in this soil because Massachusetts provides an adequate remedy for malicious prosecution." *Id.* Moreover, the First Circuit has followed the lead of a plurality of the Supreme Court in concluding that "the Due Process Clause of the Fourteenth Amendment does not provide a substantive right to be free from criminal prosecutions unsupported by probable cause[.]" *Britton v. Maloney,* 196 F.3d 24, 28 (1st Cir.1999). *See also Nieves,* 241 F.3d at 53–54. Thus, no constitutional violation can arise from the fact of a baseless prosecution itself. *See Britton,* 196 F.3d at 28–29.

▮▮▮▮ On the other hand, it is "an open question" as to whether a section 1983 claim for malicious prosecution can be based on an alleged wrongful seizure in violation of the Fourth Amendment. *Nieves,* 241 F.3d at 54. While the First Circuit has not decided the matter, "[e]very circuit to have considered the question . . . has expressed general agreement with the view that state actors who pursue malicious prosecutions against others may be held to have violated the Fourth Amendment, thereby risking the imposition of liability under 42 U.S.C. § 1983." *Britton,* 196 F.3d at 28. Accordingly, a plaintiff's allegations that groundless criminal charges resulted in an unlawful seizure may suffice to state a claim for malicious prosecution under Section 1983. *See id.* at 28–29 (explaining that the "crux of the inquiry" as to whether a state actor violated the Fourth Amendment by initiating a malicious prosecution "is whether a 'seizure' occurred").

▮▮▮▮ In the instant case, Williams alleges that the defendant police officers arrested him without probable cause and initiated baseless criminal proceedings against him through the filing of a false police

incident report and a false criminal complaint.[4] (Compl. at 20–21). He also alleges that although the prosecution ultimately concluded in his favor, he spent more than five years in prison as a result of the defendants' malicious conduct. (*See* Compl. at 1, 20). This court finds that at this stage in the litigation, Williams' allegations are sufficient to state a claim for malicious prosecution under the Fourth Amendment. Therefore, the defendants' motion to dismiss Count II should be allowed only with respect to the false arrest claim, and otherwise denied.

### C. *Count III: Claim for Fabrication of Inculpatory Evidence*

Williams alleges, in Count III of his Complaint, that the defendants deprived him of his constitutional rights under the Fourteenth Amendment by fabricating inculpatory evidence against him. The defendants contend that Count III should be dismissed because the plaintiff has failed to provide any factual support for his claim. They also contend that to the extent Count III is based on the defendant officers' testimony in the state court proceedings, the defendant is entitled to absolute immunity from liability based on that testimony. (Def. Mem. at 7–8). This court finds that the defendants have failed to show that Count III should be dismissed, either in whole or in part, at this stage of the litigation.

### *Adequacy of Factual Allegations*

 "[I]f any concept is fundamental to our American system of justice, it is that those charged with upholding the law

are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Actions taken in contravention of this prohibition necessarily violate due process . . . ." *Limone v. Condon*, 372 F.3d 39, 44–45 (1st Cir. 2004) (internal citation omitted). In the instant matter, Williams claims that the defendant police officers intentionally fabricated false evidence against him, which resulted in his conviction for an assault and battery that he did not commit. (*See* Compl. at 1, 20–22). In particular, Williams alleges that Boyle intentionally completed a false police incident report that misrepresented the events that took place on February 9, 2002 and was used as evidence against the plaintiff during the course of his criminal trial. (*Id.* at 20–21). He claims, for example, that Boyle falsely reported that Williams had thrown the alleged victim to the ground and stabbed her in the hand with a kitchen knife. (*Id.* at 21). Additionally, Williams claims that Kelley perjured himself at the hearing on the prosecution's motion *in limine* for the admission of excited utterances by testifying about a conversation he had with the alleged victim and observations he made of her when, in fact, he never went upstairs to her apartment to conduct an investigation. (*Id.* at 21–22). According to the plaintiff, Kelley's allegedly false testimony enabled the criminal proceedings against him to continue, which ultimately resulted in his wrongful conviction. (*Id.*).

Under the liberal notice pleading standard applicable to civil rights actions pursuant to Fed.R.Civ.P. 8(a),[5] Williams' fac-

---

**4.** Williams also alleges, in Count II of his Complaint, that the defendants continued the wrongful prosecution by testifying falsely against him at trial and at the hearing on the prosecution's motion in limine. (Compl. at 21). As described *infra*, police officers are absolutely immune from damages liability under Section 1983 for claims based on their testimony during a criminal trial. Therefore,

to the extent Williams is attempting to base his Section 1983 malicious prosecution claim on Boyle's and Kelley's alleged perjury during his criminal trial, the defendants are immune from liability for such conduct.

**5.** Fed.R.Civ.P. 8(a) requires only that a complaint contain "a short and plain statement of

tual allegations are sufficient to support a claim that Boyle and Kelley fabricated evidence against him which resulted in his conviction for a crime he did not commit. Moreover, they are more than adequate to put the defendants on notice as to the basis for his due process claim. *See Carter v. Newland*, 441 F.Supp.2d 208, 213–14 (D.Mass.2006) (declining to dismiss claim for alleged violation of *pro se* plaintiff's constitutional rights where complaint was thin on detail but sufficient to notify defendants of claim). Therefore, dismissal of Count III is not warranted for failure to allege sufficient facts.

### Absolute Immunity

■■■ The defendants nevertheless argue that Kelley is entitled to absolute immunity for his role in providing testimony at the hearing on the motion in *limine*. (See Def. Mem. at 7). "The official seeking absolute immunity bears the burden of showing such immunity is warranted." *Mitchell v. City of Boston*, 130 F.Supp.2d 201, 209 (D.Mass.2001). Here, the defendants have not met their burden with respect to the pretrial testimony that is the subject of Williams' due process claim.

In support of their argument that Kelley is entitled to absolute immunity, the defendants rely on the decision of the Supreme Court in *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) and on the First Circuit's decision in *Kyricopoulos v. Town of Orleans*, 967 F.2d 14 (1st Cir.1992). In those cases, the courts concluded only that police officers are absolutely immune from suit under Section 1983 for giving perjured testimony at a criminal trial and before a grand jury. *See Briscoe*, 460 U.S. at 326, 103 S.Ct. at 1110–11 (affirming Appeals Court's ruling that police officers who testify at a criminal trial are absolutely immune from damages liability based on their testimony);

*Kyricopoulos*, 967 F.2d at 16 ("district court clearly was correct in finding the police officer absolutely immune for testimony given at trial and before the grand jury" (internal citation omitted)). Significantly, however, they did not address to what extent such immunity extends to pretrial conduct or testimony of police officers. *See Briscoe*, 460 U.S. at 328 n. 5, 103 S.Ct. at 1112 n. 5 (expressly stating that the Court was not deciding whether a police officer who commits perjury during pretrial proceedings is entitled to absolute immunity); *Kyricopoulos*, 967 F.2d at 16 (stating, without analysis, that absolute immunity applied to trial and grand jury testimony).

■■■ It is clear that absolute immunity does not apply to all conduct of police officers prior to their testimony at trial. For example, in *Krohn v. United States*, 742 F.2d 24, 31 (1st Cir.1984), the First Circuit declined to extend the witness immunity discussed in *Briscoe* to a police officer swearing out a warrant affidavit. In its decision, the First Circuit noted the fundamental difference between the warrant affidavit process and the judge-supervised trial in *Briscoe*, which enabled the defendant to cross-examine the witness and provide his own evidence. *Krohn*, 742 F.2d at 31. The *Krohn* court, however, did not make any findings regarding the extent to which absolute immunity would apply to the testimony of a police officer at pretrial proceedings before the court.

■■■ In the instant case, Williams is challenging, inter alia, Boyle's pre-trial conduct in filing an allegedly false report, and Kelley's allegedly false testimony at a pre-trial hearing on a motion *in limine*. The defendants have not addressed the issue and have not established that they are entitled to absolute immunity for such

the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a)(2).

pre-trial conduct. Thus, while the defendants are not precluded from raising the issue again at an appropriate time, they have not shown at this preliminary stage in the proceedings that absolute immunity precludes Williams' due process claim against Kelley based on the defendant's alleged perjury at the motion hearing.

### D. *Count IV: Claim for Conspiracy to Violate Constitutional Rights*

Williams claims, in Count IV of his complaint, that Boyle and Kelley "conspired, reached a mutual understanding and acted in concert to violate [his] constitutional rights" in violation of Section 1983, including his right to remain free from "false arrest, malicious prosecution, unfair trial, wrongful conviction, and unlawful confinement, loss of free[do]m on parole status, loss of income, and all other grievous permanent damages and injuries set forth above." (Compl. at 22, 24). The defendants have moved to dismiss Count IV on the grounds that Williams' allegations are too vague and conclusory to state a claim, that Williams has failed to identify specific constitutional rights that were violated by the defendants' alleged conspiracy, and that Boyle and Kelley are entitled to absolute immunity. (Def. Mem. at 8–9, 12). Although this court agrees that the defendants are absolutely immune from liability based on their testimony at Williams' criminal trial, they have not shown Williams has failed to state a claim for conspiracy to deprive the plaintiff of his constitutional rights.

 "A civil rights conspiracy as commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" *Estate of Bennett v.*

*Wainwright,* 548 F.3d 155, 178 (1st Cir. 2008) (quoting *Earle v. Benoit,* 850 F.2d 836, 844 (1st Cir.1988)). Thus, "[t]o present an adequate conspiracy claim, there must be allegations of (1) an agreement between two or more state actors ... (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Lumpkin v. Lucey,* Civil Action No. 09–11921–RGS, 2010 WL 1794400, at *5 (D.Mass. May 4, 2010) (slip op.) (quotations and citations omitted). Additionally, allegations of a conspiracy under Section 1983 "must ... be supported by material facts, not merely conclusory statements." *Slotnick v. Garfinkle,* 632 F.2d 163, 165 (1st Cir.1980).

 This court agrees that Williams cannot maintain a conspiracy claim under Section 1983 based solely on the police officers' testimony at his criminal trial. As detailed above in this court's discussion regarding Count III, Boyle and Kelley are absolutely immune from liability for such testimony. *See Briscoe,* 460 U.S. at 326, 103 S.Ct. at 1110–11. Moreover, "a plaintiff cannot use a conspiracy claim to short-circuit *Briscoe's* grant of absolute immunity to testifying witnesses." *Mitchell,* 130 F.Supp.2d at 211–12. Thus, to the extent Count IV is based on the police officers' trial testimony, it is not actionable under Section 1983.

Despite the defendants' suggestion to the contrary, this court finds that Williams' conspiracy claim is not based solely on the police officers' testimony at the criminal trial. Rather, Williams claims that Boyle and Kelley acted in concert to deprive him of various constitutional rights, including but not limited to, his right to remain free from malicious prosecution, wrongful conviction and unlawful confinement. (Compl. at 24). As described above, Williams' claims for mali-

cious prosecution and fabrication of evidence are based at least in part on the defendants' conduct in allegedly fabricating a false police incident report, filing a false criminal complaint and testifying falsely at a pretrial hearing. Therefore, the defendants have not shown that the conspiracy claim should be dismissed on the grounds of absolute immunity.

The defendants argue that Williams' conspiracy claim nevertheless should be dismissed because his Complaint contains no factual allegations showing that Boyle and Kelley "reached a meeting of the minds" to violate the plaintiff's civil rights, and because Williams has not identified any specific constitutional rights that they conspired to violate. (Def. Mem. at 8). As detailed above, Williams has alleged that the defendants deprived him of his constitutional rights by initiating a malicious prosecution and fabricating inculpatory evidence against him. Furthermore, when the allegations of the Complaint and all reasonable inferences therefrom are viewed in Williams' favor, they support the existence of an agreement between the defendants to violate the plaintiff's constitutional rights.

"[T]he agreement that rests at the heart of a conspiracy is seldom susceptible of direct proof: more often than not such an agreement must be inferred from all the circumstances." *Earle,* 850 F.2d at 843. As detailed above, Williams has alleged facts indicating that the defendant police officers responded to the 911 calls together, were jointly involved in the investigation, intentionally pursued false criminal charges and fabricated evidence against him relating to the alleged assault and stabbing of a woman at 1431 Commonwealth Avenue. Thus, the essence of Williams' claims against Boyle and Kelley in this action is that they acted in concert in order to frame him for a crime which he did not commit. Under such circum-

stances, it is reasonable to infer that the defendants were acting pursuant to an agreement. *See Santiago v. Fenton,* 891 F.2d 373, 389 (1st Cir.1989) (reversing directed verdict on conspiracy claim where reasonable jury could have believed that police officers fabricated basis for arresting plaintiff, and that therefore, a conspiracy existed to arrest plaintiff illegally). Accordingly, the plaintiff has alleged sufficient facts to show that Boyle and Kelley reached a meeting of the minds to deprive Williams of his constitutional rights, and to maintain a claim for conspiracy pursuant to Section 1983.

### E. *Qualified Immunity*

Boyle and Kelley have moved to dismiss all of Williams' Section 1983 claims under the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (quotations and citations omitted).

The determination whether an official is entitled to qualified immunity requires an assessment as to whether the

facts alleged or shown by the plaintiff "make out a violation of a constitutional right" and, if so, "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* at 815–16 (quotations and citations omitted). In this case, Boyle and Kelley contend that they are entitled to qualified immunity because Williams has not pled facts showing that either of the officers violated his constitutional rights. (Def. Mem. at 14). However, as detailed *supra,* Williams has alleged sufficient facts to state a claim against Boyle and Kelley for malicious prosecution based on a violation of his Fourth Amendment rights, and for deprivation of his right to due process based on the fabrication of evidence. Thus, the defendants have not shown that they are protected from liability under the doctrine of qualified immunity.

### F. Count VII: State Law Claim for Malicious Prosecution

■ In Count VII, Williams is seeking to hold Boyle and Kelley liable for malicious prosecution under state law. In order to recover for malicious prosecution under Massachusetts law, the plaintiff must establish that "(1) [he was] damaged because the defendants commenced the criminal prosecution without probable cause; (2) that they did so with malice or improper purpose, and (3) that the criminal action terminated in [his] favor." *Afreedi v. Bennett,* 517 F.Supp.2d 521, 540 (D.Mass.2007). The defendants contend that Williams has failed to plead sufficient facts to state a claim for malicious prosecution. This court disagrees, and recommends that the motion to dismiss Count VII be denied.

The defendants, citing *Broussard v. Great Atl. & Pac. Tea Co.,* 324 Mass. 323, 86 N.E.2d 439 (1949), argue that Williams' conviction for assault and battery conclusively establishes the existence of probable cause and bars his malicious prosecution claim even though the conviction was reversed on appeal. (Def. Mem. at 11). However, in that case the court ruled that

> a conviction of the accused by a tribunal to which the complaint was made, although reversed on appeal, conclusively establishes the existence of probable cause, *unless the conviction was obtained solely by false testimony of the defendant charged with malicious prosecution or is impeached on the ground of fraud, conspiracy or subornation in its procurement.*

*Broussard,* 324 Mass. 323, 326, 86 N.E.2d 439, 440 (1949) (emphasis added; quotations, citation and punctuation omitted). Here, Williams alleges that his conviction was obtained by the defendants' false testimony and as a result of a conspiracy between the defendants to deprive him of his constitutional rights. Therefore, *Broussard* does not foreclose the plaintiff's state law claim for malicious prosecution.

■ The defendants also argue that the claim should be dismissed because Williams has failed to allege that the criminal proceedings against him were initiated for an improper purpose. (Def. Mem. at 11–12). Again, this court disagrees. "Proof of improper motive requires proof that [the defendant] acted primarily for a purpose other than that of properly carrying out his duties, or was attempting to achieve an unlawful end or a lawful end through unlawful means, or intended to harass, vex, or annoy the Plaintiff[ ]." *Afreedi,* 517 F.Supp.2d at 540. If, as the plaintiff alleges, Boyle and Kelley initiated criminal proceedings against him without any evidence that he had committed a crime, it can be inferred that they were acting for purposes other than the proper carrying out of their duties as police officers.

Finally, the defendants argue that they are entitled to absolute immunity. As detailed above, while absolute immunity

shields the defendants' trial testimony, they have not established that the doctrine applies to the pre-trial conduct at issue here. Accordingly, for all these reasons, this court recommends that the motion to dismiss be denied with respect to Williams' state law claim for malicious prosecution.

## V. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the City's motion to dismiss (Docket No. 14) be ALLOWED as to the civil right claims (Count VI) and DENIED as to the negligence claim (Count VIII).

With respect to the individual police officer defendants' motion to dismiss (Docket No. 29), this court recommends that the motion be ALLOWED IN PART and DENIED IN PART. Specifically, this court recommends for the reasons detailed herein that the plaintiff's claims for improper investigation and false arrest asserted against Boyle and Kelley in Count I, and the false arrest claim asserted against the officers in Count II be dismissed for failure to state a claim, but that the motion otherwise be denied.[6]

February 18, 2011

---

**6.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See *Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).